**ESCO CORPORATION, Plaintiff,**

v.

**HENSLEY EQUIPMENT CO., Inc., Defendant.**

**Civ. A. No. 3–1010.**

United States District Court
N. D. Texas,
Dallas Division.
Feb. 18, 1966.

Storey, Armstrong & Steger, by Hugh L. Steger, John K. DeLay, Jr., Dallas, Tex., for plaintiff. Jerome F. Fallon of Dawson, Tilton, Fallon, Lungmus & Alexander, Chicago, Ill., of counsel.

Henry Baer, Dallas, Tex., for Hensley Equipment Co., Flehr & Swain, by Thomas O. Herbert, San Francisco, Cal., of counsel.

Ogden K. Shannon, Fort Worth, Tex., for Texas Steel Co.

HUGHES, District Judge.

## FINDINGS OF FACT

1. This is an action for infringement of U. S. Patent No. 2,919,506, relating to excavating teeth, which are wedge-shaped projections installed on the forward edge of a dipper or bucket to facilitate penetration of the earth. The complaint charges Defendant with infringe-

ment by making and selling tooth points covered by the Letters Patent. Defendant denies validity of the patent and infringement, and has filed four counterclaims, seeking a declaratory judgment that U. S. Patents 2,919,506, 3,026,947 and 3,079,710 are invalid and not infringed by Defendant alleging violation of antitrust laws, misuse and unfair competition by Plaintiff.

2. The jurisdiction of this Court is predicated upon the fact that this is an action arising under the Patent Laws of the United States.

3. The Plaintiff is a corporation organized and existing under the laws of the State of Oregon and has its principal place of business in Portland, Oregon. It manufacturers and sells points and adapters for dragline buckets, backhoes, and shovel dippers in construction, mining and other earthmoving jobs. Plaintiff is the owner of the entire right, title, and interest in and to U. S. Patent No. 2,919,-506.

4. The Defendant is Hensley Equipment Co., Inc., a corporation organized and existing under the laws of the State of Texas, with its principal place of business in Dallas, Texas. Defendant is also engaged in the business of manufacturing and selling points and adapters for heavy equipment.

5. U. S. Patent No. 2,919,506 was issued on January 5, 1960, upon the application of Paul V. Larsen, application for which was filed April 21, 1958.

6. The invention relates to an excavating tooth which is installed on the forward edge of a dipper or bucket. The main feature of all claims is that at least one of the upper and lower bearing surfaces of the point of the tooth is a "surface of revolution" having a vertical axis.

7. For the last 20 years excavating teeth have been made in two parts, an adapter secured to the leading edge of the bucket and a replaceable point secured to the adapter by means of a removable locking pin. Without these penetrating teeth, the leading edge of the bucket would have to withstand the shock of en-countering rocks. This would mean expensive repairs as contrasted to merely replacing the projection itself.

8. In the type of adapter and point commonly used previously, the adapter and point had angularly related flat surfaces. In the swinging movement of the tooth point on the adapter nose under impact with rocks, contact between the flat angular mating surfaces of the point and nose was reduced to a small, limited area. This resulted in localized stress on the point and nose in that area. The result of this action was to deform the hard-to-remove adapter so as to make it unable to receive a new point.

9. In order to prevent deformation of the adapter, there was need for the nose and point members to have surfaces which remain in contact during lateral movement of one of the members with respect to the other, while at the same time providing a sturdy interlock between the members.

10. The invention in suit departs from the flat angular contacting nose and point socket surfaces and uses conical surfaces of revolution having a vertical axis, thus enabling the parts to move in an arc relative to each other with the bearing surfaces of the two members substantially in full contact.

11. As stated in the patent, one object is to provide a combination of nose and socket elements united by keys or other means whereby the parts may swing relative to each other to a limited extent while at the same time providing wide areas of contact between the members during each portion of such travel so that a large bearing surface is provided between the members under heavy load and irrespective of the relative position of the two members.

12. The excavating teeth with the conical bearing surface of the invention in suit have enjoyed substantial commercial success and sales have materially increased. Caterpillar Tractor Company, a well-known manufacturer of excavating equipment, was licensed under the patent and Esco received the 1962 Mining World award for "achievement in equipment

**634**

development aiding the technological advancement of the mining industry."

13. Claims 1 and 3 are directed to the combination of the point and adapter. Claim 1 reads: "1. A supporting structure for an excavating tooth, and the like, subject to stresses tending to produce sideways movement, comprising a tapered nose member and a socket member receiving said nose member, said socket member having confronting upper and lower interior bearing surfaces fitting corresponding upper and lower exterior bearing surfaces on said nose member, said bearing surfaces being surfaces of revolution having a common axis extending vertically of said nose, and means on said axis interconnecting said members for limited relative rotation of one of said members in a sideways direction about said axis, whereby said bearing surfaces remain in fitting contact during said sideways movement of one of said members."

14. Claims 8, 20 and 28 are directed to the replaceable excavating tooth point. Claim 8 reads: "8. A replaceable excavating tooth point, comprising a spike portion integral with and projecting forwardly from a supporting portion, said supporting portion having top and bottom bearing surfaces adapted to engage longitudinally-extending top and bottom bearing surfaces on a tooth point support, said bearing surfaces on said tooth point being generally convergent in a direction longitudinally of the tooth point, and said bearing surfaces being surfaces of revolution having a common axis of generation adjacent the rear extremity of said supporting portion and extending in an approximately vertical direction with respect to said top and bottom surfaces."

15. Hensley Equipment Co., Inc. supplied Texas Steel Company with a model of an Esco point having conical surfaces and ordered Texas Steel to copy it with certain modifications. The Esco point involved in suit has a flat surface at the socket tip, which is the subject of another patent. Texas Steel was instructed to remove this flat surface and to put notches at the tip of the adapter and corresponding bumps in the socket tip of the point. For a period from September 1964 to December 1965 Texas Steel manufactured for Hensley points Nos. 25, 40, 45, 50 and 55 in which the corresponding Esco points 25, 40, 45, 50 and 55 were copied with the changes noted above.

16. Hensley is now manufacturing its 25-size point and adapter and 40-, 45- 50-, and 55-size points. All are copies of the Esco points and adapter, with surfaces of revolution on a vertical axis, with changes noted. Hensley points 25, 40, 45, 50, and 55 have been sold as replacements for excavating teeth. In the replacement of points, there is no evidence of a renewal by Hensley of an unpatented element of a patented combination. The renewable element furnished by Hensley, that is, the point, is itself patented.

17. Prior patents do not anticipate excavating teeth with points or adapters having conical surfaces of revolution about a vertical axis.

18. Hensley's 601 point manufactured by Hensley prior to the patent in suit, does not have either conical upper or lower bearing surfaces of revolution about a vertical axis and does not anticipate the patent in suit.

19. The invention of the patent in suit is a novel advance in the art of earth excavation and would not have been obvious to one having ordinary skill in the art at the time the invention of such patent was made.

20. Esco owns the Baer Excavating Tooth Patent No. 2,483,032, which is valid. In late 1957 a new excavating tooth also consisting of a point and adapter was developed by Esco which embodied conical bearing surfaces, and drawings of prototypes of conical teeth were prepared which carried the Baer patent number because they employed the interlock arrangement of the Baer patent. The conical tooth patent, No. 2,-919,506, which is the patent in suit, was issued in 1960 and since that time Esco has marketed both the Baer-type and the conical-type teeth.

21. For many years Esco has distributed its products through independent dealers. In 1960 Esco issued a policy statement relative to advertising, inventories and the like. Since 1960 Esco has had dealers dealing in competitive lines and Esco has not terminated any dealership because of failure to comply with the said policy statement. The existence of such unenforced policy has not substantially lessened competition or created a monopoly in any line of commerce.

22. In 1961, following the initial success of the new conical excavating teeth, Caterpillar decided to adopt the conical principle in teeth for its new front-end loader. Caterpillar designed its own version of the conical teeth and negotiations were commenced for an exclusive license under the conical patent, No. 2,919,506, as to the particular design on which Caterpillar had spent considerable time and money. Negotiations continued over the period April 1962 to November 1963 as to an equitable termination provision, royalty rate, and a second patent, No. 3,079,710, having to do with a stabilized tip which is used on the Caterpillar Scarifier. Also included in the agreement is a license under U. S. Patent No. 3,126,654 covering the locking pin and plug used in the conical excavating teeth. The license included Esco's foreign patents corresponding to the above-mentioned United States Patents. Such licensing of foreign patents does not constitute a division of the world market. No royalty was payable if the article was purchased from Esco or a licensee of Esco. The license agreement imposed no obligation on Caterpillar to pay royalties on articles coming under an expired Esco patent. Standing by itself, as it does, the termination provision under Paragraph 11 of the Caterpillar license agreement for reducing the exclusive license to non-exclusive constitutes no illegal deterrent to Caterpillar.

23. Since 1962, Esco has been marketing a ripper point, No. 35R15–2. This ripper point is covered by U. S. Patent Nos. 3,026,947 issued in 1962 and 3-079,710 issued in 1963 and since the time it was first marked with a patent number, has carried one or the other of said numbers. The marking of the ripper point with the additional number namely 2,919,506, was not done with intent to deceive the public. Patents Nos. 3,026,-947 and 3,079,710 were granted by the United States Patent Office after specific consideration had been given to Patent No. 2,919,506 and such patents, therefore, are not illegal extensions of Patent 2,919,506.

24. Neither the communication by Esco to Texas Steel Company, nor the filing of this lawsuit by Esco including Texas Steel Company as a party, affected the treatment of Hensley by Texas Steel Company as its supplier of castings. Esco did not advise any customer or prospective customer of Hensley that any wear point sold by Hensley was an infringement of any Esco patent, and Esco did not advise any customer or prospective customer of Hensley that Hensley would be forced to cease selling wear points. Hensley notified the trade that it was marketing "new conical Esco-type points" on February 1, 1965. The bringing of this lawsuit for infringement of its patent by Esco in May 1965 was with just cause and without malice. Esco did not charge Hensley with infringement of U. S. Patent Nos. 3,026,947 and 3,079,-710. Therefore, the Court lacks jurisdiction under the Declaratory Judgment Act.

25. Esco was justified for business reasons to reduce its discount in August 1965 on its adapters, manufactured under the Baer patent, and such reduction has not resulted in any closing of the market on teeth made under that patent. The reduction in discount was necessitated by lower sales of teeth under the Baer patent because of the commercial success of the sales of teeth under the conical patent in suit.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the subject matter in suit and over the

parties, except as to the validity and infringement of U. S. Patents 3,026,947 and 3,079,710.

2. The Plaintiff, Esco Corporation, is the owner of the entire right, title, and interest in and to said Patent No. 2,919,506 and has the right to maintain suits for infringement of such patent.

3. Under Title 35, U.S.C.A. § 282 the patent in suit is presumed to be valid. In the absence of clear and convincing evidence to the contrary, the law presumes that the Patent Office correctly issued the patent.

4. Unless the subject matter of a patent involves both novelty and invention, the patent is invalid, for mere novelty without invention is insufficient. The question of invention involves the whole of the prior art, and the patentee is charged with knowledge of all the prior art extant at the time of his alleged invention whether actually known to him or not. The mere exercise of the skill of the calling does not amount to invention.

5. The prior art offered in evidence by Defendant does not anticipate any of the claims of the patent in suit. The utilization of a conical surface of revolution having a vertical axis thus enabling the point and adapter to move in an arc relative to each other is the new element of the excavating tooth which distinguishes it from prior art.

6. Where there had been a long standing need for a solution to overcome defects in the prior art, the solution to the problem as solved by the patentee of the patent in suit was not obvious to those skilled in the art.

7. The commercial success of Plaintiff's invention described in the patent in suit is a circumstance when combined with other circumstances, which indicates invention.

8. Mere colorable changes in the point and adapter made by Defendant cannot avoid infringement. The doctrine of permissive repair pertains only to the renewal of an unpatented element of a patented combination. The point, although a renewable element, is itself patented and hence the furnishing by Hensley of such a point is not permissible repair.

9. Defendant by its manufacture and sale of points and adapters with conical surfaces of revolution having a vertical axis has infringed Claims 1, 3, 8, 20 and 28 of the patent in suit.

10. Plaintiff has not misused the patent in suit and is not barred form enforcing such patent. Plaintiff has not violated the antitrust laws of the United States. Title 15, U.S.C.A. §§ 1–33. Plaintiff is not estopped under the doctrine of unclean hands from enforcing U. S. Patent No. 2,919,506. Plaintiff has not unfairly competed with Defendant. There has been no extension of any patent monopoly by Plaintiff. There has been no violation of Title 35, U.S.C.A. § 292 by Plaintiff.

11. The patent in suit has not been misused by Plaintiff in an effort to extend the lawful scope thereof, monopolize the excavating teeth industry, or unlawfully restrain trade therein.

12. Plaintiff is entitled to an injunction against further infringement of the patent in suit, to an accounting of its damages sustained by reason of such infringement, such damages to be not less than a reasonable royalty, to a judgment on the damages so determined, and execution on such judgment and to an award of costs. The questions of willful infringement entitling Plaintiff to increased damages under Title 35, U.S.C.A. Section 284, the amount and period of interest, and attorneys' fees pursuant to Title 35, U.S.C.A. § 285 are hereby specifically reserved until the accounting period.